Elliot Horn
2100 Napa Vallejo Hwy.
Napa, CA 94558
In pro per



FILED
08 MAY 29 PM 2:21
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| ELLIOT HORN AND T-18 PATIENTS, | Case No. CV 08 2419 SI (PR) |
|---|---|
| Plaintiffs, | MOTION FOR EXEMPTION FROM PRISON LITIGATION REFORM ACT (PLRA), REQUEST TO TEMPORARILY WAIVE FILING FEE, REQUEST FOR ORDER TO SHOW CASUE, TEMPORARY RESTRAINING ORDER, AND REQUEST FOR PRELIMINARY INJUNCTION. |
| v. | |
| ED FOULK AND T.C. HULSEY, | |
| Defendants. | |

TO THE HONORABLE UNITED STATES DISTRICT COURT:

    Please take notice that the Ward T-18 Patients, among others, who are confined at Napa State (mental) Hospital (NSH) on Ward T-18, and signed affidavit in this matter hereby make request to this Federal Court for the Court to temporarily waive the filing fee, issue and have U.S. Marshall serve process, issue emergency injunctive relief because we are in danger of suffering irreparable injury or death if such relief is not granted immediately.

    This lawsuit concerns the NSH failing to provide it's residents with a safe and humane environment in violation of the federal and state constitutions and laws and perpetually placing it's patients in danger of great bodily injury and/or death by failing to protect them from the 6' x 5," about 350 pound extremely violent patient Dennis Carreon who has violently attacked and injured three more patients since this lawsuit was filed. Dennis Carreon has been attacking patients and staff for over two years on every ward he is moved to and neither the patients nor staff appreciate this, but neither the Program Management, the Administration, nor the Patients'

1

Rights Advocates will put an end to this violence and the patients have no other recourse but to ask this Federal Court for emergency injunctive relief.

Where state prison inmate's action in federal court for injunctive relief involved specific claims of continuing cruel and inhuman physical abuse of inmates and was thus extraordinary and exceptional, and where, also, question whether exhaustion of state judicial remedies should be required in similar prisoners' suits under Civil Rights Act was sub judice before court sitting en banc, court did not abstain from intervention but proceeded to merits. (See *Inmates of Attica v. Rockefeller* (1971) 453 F.2d 1242.)

"Failure to protect an inmate from a known risk of harm at the hands of another inmate is actionable under § 1983," and a plaintiff should not have to wait until something tragic happens before the situation is corrected. (See *Thomas v. Estelle*, 603 F.2d 488, 490 (5th Cir.1977); *Curtis v. Everette*, 489 F.2d 516, 518-21 (3d Cir.1973). In *Farmer v. Brennan*, in addressing the petitioner's argument "that a subjective deliberate indifference test will unjustly require prisoners to suffer physical injury before obtaining court-ordered correction of objectively inhumane prison conditions. The Court stated "[i]t would, indeed, 'be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them.'" (*Helling v. McKinney*, 509 U.S. 25, 33.) The Court continued "[b]ut nothing in the test we adopt today clashes with that common sense. Petitioner's argument is flawed for the simple reason that '[o]ne does not have to await the consummation of threatened injury to obtain preventive relief." (*Pennsylvania v. West Virginia*, 262 U.S. 553, 593, (1923). Consistently with this principle, a subjective approach to deliberate indifference does not require a prisoner seeking "a remedy for unsafe conditions [to] await a tragic event [such as an] actua[l] assaul[t] before obtaining relief." (*Farmer v. Brennan*, 511 U.S. 825, 845-846 (1994), citing *Helling, supra*, at 33-34.) (All emphasis mine.)

## Certificate of Funds Form

I, Elliot Horn, received the Certificate of Funds in Prisoner's Account form to send to the institution's Trust Office to be completed and signed so I can return this form with the in forma pauperis form because I currently do not have the funds to pay the filing fee. However, this is an emergency and this lawsuit needs to be filed as soon as possible; but upon information and belief, the institution's Trust Office frequently takes a considerable amount of time to complete and sign these forms and sometimes does not even respond to the forms. This has happened more than once and in those cases the forms had to be mailed to Mr. William Sargent at the Citizens

Commission on Human Rights[1] Office in Shasta County for him to send the forms to the Trust Office to "remind" the Trust Officer to complete and sign the forms.

### PLRA Exemption

Persons like the plaintiffs in this case who are committed to mental hospitals are supposed to receive "more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish" (*Sharp vs. Weston*, 233 F. 3d 1166, 1172 (9th Cir. 2000), quoting *Youngberg v. Romeo* (1982) 457 U.S. 307 at 322, 102 S.Ct. 2452; Cf. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976, and mentally disordered persons—regardless of their path to the institution—should be regarded as patients rather than inmates in institutions. (*Department of Developmental Services v Ladd* (1990) 224 Cal.App. 3d 128, 137-138.) Furthermore, according to California Welfare and Institutions Code, § 6250, mentally disordered persons charged with crime or to the criminally insane subject to judicial commitment shall be treated, not as criminals, but as sick persons.

Just as inmates confined in prisons, patients involuntarily committed to State hospitals after criminal trials have a constitutional right to meaningful access to the courts. (*See Ward v. Kort*, 762 F.2d 856, 858 (10th Cir.1985); *Johnson by Johnson v. Brelje*, 701 F.2d 1201, 1207 (7th Cir.1983); *King v. Atiyeh* (9th Cir. 1987) 814 F.2d 565, 568 fn 2), and the appointment of counsel would ensure meaningful access to the court.

Even though mental patients confined in state hospitals are supposed to have more rights and be treated better than prisoners confined in prisons, that opposite is true in a variety of ways. When prisoners encounter any legal problems the Prison Law Office at San Quentin, a privately supported group of attorneys who are supported in major part by a charitable foundation and provide direct legal services at no cost to prison inmates, have represented over 5,000 prisoners since the office was founded in 1976 and are still representing indigent inmates at no cost. (See *In re Head* (1986) 42 Cal.3d 223, 234.) However, Protection and Advocacy (PAI), Inc., a huge legal organization that receives a lot of "big money donations" from federal, state, and private

---

[1] The Citizens Commission on Human Rights (CCHR) International was established in 1969 by the Church of Scientology to investigate and expose psychiatric violations of human rights, and to clean up the field of mental healing. Today, it is estimated that CCHR has more than 250 chapters in over 31 countries. Its board of advisors, called Commissioners, includes doctors, lawyers, educators, artists, business professionals, and civil and human rights representatives. CCHR has inspired and caused many hundreds of reforms by testifying before legislative hearings and conducting public hearings into psychiatric abuse, as well as working with media, law enforcement, and public officials the world over.

sources and is mandated to advocate for persons with developmental and psychiatric disabilities, will not meaningfully advocate for the patients in NSH no matter how much they are abused and their constitutional rights are violated. (See Protection and Advocacy Mentally Ill Individuals Act of 1986 ("PAMII"), 42 U.S.C. §§ 10801-10851.)

Some patients believe that PAI is virtually impotent and will not meaningfully advocate for the NSH patients because PAI receives huge donations form the California Department of Mental Health (DMH) and there is a conflict of interest and PAI does not want to "bite the hand that feeds them." There are other conflict of interest provisions in the contract between PAI and DMH and this is also believed to contribute to the failure of PAI to meaningfully advocate for the NSH patients.

The plaintiffs request the Court to certify this matter as a class action lawsuit and appoint counsel, and to exempt this case from the Prison Litigation Reform Act (PLRA) altogether, as the patients were committed to the State Mental Hospital System pursuant to California Penal Code, § 1026 and persons committed pursuant to section 1026 should be exempted from all provisions of the PLRA, because section 1026 "patients" are not supposed to be considered as or treated like prisoners and "[i]t is beyond dispute that the primary purpose of the PLRA, and the exhaustion provisions in particular, was to reduce the inordinately large volume of "prisoner cases" being filed in the federal courts." *(Citation Omitted.)*

Said another way, the primary purpose of the PLRA was to reduce the inordinately large volume of cases being filed in the federal courts by "prisoners" and NOT by "mental patients," and very few cases have been filed in the federal courts by mental patients or by lawyers representing mental patients during the entire history of the mental "health" system. This is very easy to verify by only typing a few Keywords into any legal database.

### Conclusion

This lawsuit needs to be filed, served, and injunctive relief needs to be issued immediately due to the grave nature of this lawsuit and the lengthy delay described in getting the certificate of funds form signed by the Trust Office. I, Elliot Horn have sent the Certificate of Funds in Prisoner's Account form to the Trust Office and I hope it is completed, signed, and returned to me forthwith so I can mail the form back to the Court hopefully before someone else is hurt or perhaps even killed by Dennis Carreon.

///

///

## Request for Relief

Therefore, plaintiffs respectfully request the following, but not limited to relief:

1. Due to the grave nature of this lawsuit and the lengthy delay described in getting the certificate of funds form completed and signed by the Trust Office, plaintiffs respectfully request the Court to temporarily waive the filing fee until Elliot Horn is able to complete the in forma pauperis process, serve summons and complaint on the defendants, and issue emergency injunctive relief immediately to compel the NSH defendants to immediately stop the violence perpetuated by Dennis Carreon.

2. Any other and further relief that the Court deems just, equitable, and proper.

I declare under penalty of perjury the foregoing is true and correct to the best of my knowledge, information, memory, and belief.

Respectfully submitted,                              Date: May 25, 2008

Elliot Horn

*Elliott Horn   5/26/08.*

Danny Atterbury
2100 Napa Vallejo Hwy.
Napa, CA 94558

**Legal Mail**
Mailed on 27-May-08

Office of the Clerk
United States District Court
Northern District of California
450 Golden Gate Ave.
San Francisco, California, 94102

Please stamp legal mail
$12.50 Client, per A.D.

02 1M
0004219468
MAILED FROM ZIPCODE 94558
$ 00.42⁰
MAY 28 2008
PITNEY BOWES
UNITED STATES POSTAGE